(138 P.3d 1238)
No. 95,551

SOUTHWESTERN BELL TELEPHONE, L.P., *Appellee,* v. APAC-KANSAS, INC., *Appellant.*

300

Opinion filed July 21, 2006.

*Anthony L. Gosserand*, of King Hershey, P.C., of Kansas City, Missouri, for appellant.

*David D. Backer*, of Robert A. Kumin, P.C., of Mission, for appellee.

Before MALONE, P.J., GREEN, J., and BUKATY, S.J.

GREEN, J.: APAC-Kansas, Inc., (APAC) appeals from the trial court's decision awarding damages to Southwestern Bell Telephone, L.P., (SBT) for its claims of negligence under the Kansas Underground Utility Damage Prevention Act, K.S.A. 66-1801 *et seq.* (Act). SBT sued APAC for negligence after APAC damaged two of SBT's telephone cables while performing excavation work. On appeal, APAC contends that the trial court erred in finding that the damaged 1,800 pair telephone cable that was the subject of Count III of SBT's petition was properly marked. After reviewing the trial court's decision, we find that the trial court never made a clear finding whether SBT properly marked the location of the tolerance zone of the 1,800 pair telephone cable. Because such a finding is necessary to establish liability under the Act, we reverse and remand for the trial court to determine whether SBT properly marked the location of the tolerance zone of the 1,800 pair telephone cable.

Next, APAC contends that the trial court erred in finding that there was a rebuttable presumption of negligence on the part of APAC concerning the 900 pair telephone cable involved in Count II and the 1,800 pair telephone cable involved in Count III. APAC maintains that the trial court never made the finding that APAC failed to use reasonable care in violation of K.S.A. 66-1809(a), which would justify a rebuttable presumption of negligence under K.S.A. 66-1811(a). Nevertheless, concerning the damage to the telephone cable involved in Count II, the trial court found that APAC failed to use reasonable care in its excavation. There is substantial competent evidence in the record to support this finding.

Concerning the damage to the telephone cable involved in Count III, it is unclear whether the trial court found that reasonable care had been used by APAC in its excavation work. Nevertheless, we are remanding the case for further findings on whether the location of the tolerance zone of the telephone cable in Count III was properly marked. If the trial court finds that the location of the tolerance zone was properly marked, the trial court should then make further findings about whether APAC used reasonable care in its excavation work involved in Count III. Accordingly, we affirm in part, reverse in part, and remand.

SBT's claims against APAC arose from three separate incidents in which SBT's telephone cables were damaged. The first incident occurred on August 26, 2003, when APAC employees were removing a concrete curb with a backhoe. As the curb was being picked up and swung into the street with the backhoe, an SBT 900 pair telephone cable was picked up with the curb and damaged. APAC employee Richard Beemer testified that the cable was located directly beneath the curb. Upon arriving to assess the damage, SBT customer service technician Mark McLaren measured the depth of the telephone cable to be approximately 18 inches. McLaren measured the depth from the top of the concrete to the top of the cable. McLaren testified that the cable was not attached to the concrete. There was no dispute that SBT had marked the cable accurately. McLaren testified that after the first incident occurred, he told the backhoe operator for APAC to be more cautious because some of the cables in the area were shallow.

The second incident occurred on October 8, 2003, when APAC employees were again using a backhoe to remove another concrete curb. The concrete curb was located across the street and approximately 80 feet from the location of the previous incident. The telephone cable underneath this area was the same 900 pair telephone cable involved in the earlier incident. Although APAC employees were aware of the shallow depth of the telephone cable due to the earlier incident, they did not use a different procedure when removing the curb.

SBT's manager of damage prevention, Jeff Irons, indicated that when a telephone cable is located underneath concrete as it was

in this second incident, the excavator can use nonmechanical equipment to expose the cable. According to Irons, the excavator "can cut the concrete and remove the concrete and then expose it underneath there. They can non-mechanically expose the depth of it there."

On the other hand, Beemer testified that he could not "hand expose" the underground facility that was involved in the first two incidents because there was concrete on both sides of the area. Beemer testified that approximately 15 feet from the area where they were digging was a place where the underground telephone cable was not covered by concrete. When questioned about whether there were any efforts made to "hand expose" the cable at that location, Beemer responded, "No, because of the fact that it probably would have changed anyway and it was solid rock back there cause it was an alleyway." Nevertheless, SBT customer service technician Scott Brown explained that an excavator can remove concrete by using a jackhammer to break up the concrete, a saw to cut the rebar, and then a hand shovel to dig out the pieces.

According to Beemer, when the backhoe removed the concrete and swung it over the street in this second incident, there were several broken wires on the curb. Beemer testified that the telephone cable was directly beneath the curb that was removed. SBT technician Brown measured the depth of the cable to be approximately 18 inches. Brown testified that the damage to the cable involved approximately 8 feet and could have been avoided. There was no dispute that SBT had marked the cable accurately.

The third incident occurred on October 13, 2003, when SBT was notified through customer reports about another damaged cable. When McLaren arrived at the excavation site, the telephone cable was not exposed. McLaren discovered that an 1,800 pair telephone cable had been damaged in an area where APAC was doing excavation work. McLaren measured the depth of the cable to be 22 inches. McLaren testified that APAC had struck the cable with a Bobcat machine. Beemer testified that before SBT discovered the damaged cable, he had removed a "concrete apron" and had used a Bobcat to clear off some of the dirt in that area.

According to McLaren, when he discovered the damage to the cable, SBT's markings for the cable were difficult to see but were still visible. McLaren testified that there was a "multifacility" mark on the sidewalk and a single cable mark right next to it. Upon preparing to find the damaged cable, McLaren placed a new marking in the area. McLaren testified that the damage to the cable occurred within 24 inches of a multi-facility marking. In contrast to McLaren, Beemer testified that there were no previous markings by SBT for the 1,800 pair cable that was damaged. Beemer indicated, however, that there had been another marking in the area "for a large tile in case [sic] the phone line."

APAC foreman Jeffrey Dunham arrived at the area while the SBT crew was there. Dunham called APAC superintendent David Duncan and told him that the SBT crew was marking the cable that had just been hit and that Dunham did not see any other marks around it. Dunham then went to the area where this third incident occurred and took pictures. The pictures taken by Dunham were admitted into evidence at trial.

SBT sued APAC for negligent property damage to its telephone cables, setting forth each incident in three separate counts: the August 26, 2003, incident was listed in Count I; the October 8, 2003, incident was listed in Count II; and the October 13, 2003, incident was listed in Count III. APAC filed an answer and counterclaim to SBT's petition. APAC denied SBT's allegations of negligence. APAC raised an affirmative defense that Counts I and II of SBT's petition were barred by SBT's contributory negligence in failing to bury its cable at a sufficient depth to prevent damage. In addition, APAC raised an affirmative defense that Count III was barred by SBT's failure to properly mark the location of the cable in the excavation area. APAC also raised counterclaims against SBT due to SBT's failure to bury its 900 pair telephone cable at a sufficient depth and to properly mark the location of its 1,800 pair cable. APAC alleged that it had suffered damages because it was forced to suspend work in the area and to incur additional expenses for labor and materials to complete its work in the area.

A pretrial order was agreed to by the parties and signed by the trial court. In the pretrial order, the parties stipulated that APAC's

employee struck and damaged SBT's telephone cables on the dates and locations referenced in SBT's petition. The parties further stipulated that "pursuant to K.S.A. 66-1804 that [APAC] served a notice of intent of excavation to [SBT] via Kansas One Call with <u>regard to requesting that [SBT] mark the locations of the telephone cables at issue prior to the commencement of [APAC's] excavation in the area of each of the telephone cables</u>."

The following issues of fact were identified in the pretrial order: (1) whether SBT properly marked the location of its 1,800 pair telephone cable; (2) whether SBT was required to bury its facilities at a specific depth; (3) whether the 900 pair telephone cable was buried at a sufficient depth; (4) whether APAC excavated with reasonable care as was necessary for the protection of the 900 pair telephone cable; (5) whether SBT has suffered damages and the fair and reasonable amount of such damages; and (6) whether APAC has suffered damages and the fair and reasonable amount of such damages.

At the bench trial in this case, both SBT and APAC presented evidence of the damages that they sustained from the three incidents. The trial court announced its ruling during a later telephone conference. In response to the issues of fact identified in the pretrial order, the trial court first found that APAC had properly marked the location of its 1,800 pair cable. The trial court stated that although SBT employees had testified that the markings for the 1,800 pair cable were visible, it could not see them in the pictures. Nevertheless, the trial court found that the damage occurred within the tolerance zone of another marking. The trial court next found that there was no requirement under the Act that an operator bury its facilities at a certain depth. The trial court further found that the 900 pair telephone cable had not been buried at a sufficient depth. In response to the fourth issue of fact identified in the pretrial order, the trial court found that APAC failed to exercise reasonable care in its excavation and that there existed a rebuttable presumption of negligence. The trial court further found that SBT had suffered damages.

Regarding Count I of SBT's petition and APAC's counterclaim, the trial court found that there was 50% negligence on the part of

each party and did not award any damages. The trial court stated that there was negligence on the part of SBT by placing the cable at such a shallow depth and not giving that information to APAC. The trial court noted that if SBT had given APAC notice of the depth of the cable, it could have taken additional steps to try to avoid damaging the cable. On Count II, the trial court found that APAC was responsible for 75% of the damages and that SBT was responsible for 25% of the allowed damages. The trial court stated that although SBT had failed to disclose the shallow depth of the cable, APAC had been put on notice of the depth based on the earlier incident. On Count III, the trial court determined that APAC was 100% liable for the allowed damages. The trial court noted that the damage had occurred within the properly marked tolerance zone and that there was a presumption of negligence on the part of APAC. The trial court awarded total damages of $14,091.99 to SBT.

*Standard of Review*

The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

*I. Did SBT properly mark the location of the tolerance zone for the telephone cable involved in Count III of SBT's petition?*

On appeal, APAC contends that the trial court erred in finding that SBT properly marked the location of its 1,800 pair telephone cable that was the subject of Count III of SBT's petition and Count III of APAC's counterclaim. APAC's argument requires interpretation of the Kansas Underground Utility Damage Prevention Act, K.S.A. 66-1801 *et seq.* Interpretation of a statute is a question of law over which an appellate court's review is unlimited. This court

is not bound by the trial court's interpretation of a statute. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004). When interpreting statutes, we bear in mind that the fundamental rule to which all other rules are subordinate is that the legislature's intent governs if that intent can be ascertained. When a statute is plain and unambiguous, the court must give effect to the legislature's intention as expressed rather than determine what the law should or should not be. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005).

K.S.A. 66-1803 places a duty upon an excavator to ascertain the location of all underground facilities in a planned excavation site: "An excavator shall not engage in excavation near the location of any underground facility without first having ascertained, in the manner prescribed in this act, a location of all underground facilities in the proposed area of the excavation."

Once the operator of an underground facilities has been notified of a planned excavation, K.S.A. 66-1806(a) imposes a duty upon the operator to mark the tolerance zone of underground facilities:

"Within two working days, beginning on the later of the first working day after the excavator has filed notice of intent to excavate or the first day after the excavator has whitelined the excavation site, an operator served with notice, unless otherwise agreed between the parties, shall inform the excavator of the tolerance zone of the underground facilities of the operator in the area of the planned excavation by marking, flagging or other acceptable method."

K.S.A. 66-1802(p) defines the "tolerance zone" as "the area within 24 inches of the outside dimensions in all horizontal directions of an underground facility."

K.S.A. 66-1806(d) sets forth the excavator's limited liability when an operator has failed to properly mark the tolerance zone of underground facilities:

"If the operator notifies the excavator that it has no underground facilities in the area of the planned excavation, fails to respond or improperly marks the tolerance zone for the facilities, the excavator may proceed and shall not be liable to the operator for any direct or indirect damages resulting from contact with the operator's facilities, except that nothing in this act shall be construed to hold any excavator harmless from liability to the operator in those cases of gross negligence or willful and wanton conduct."

Thus, under K.S.A. 66-1806(d), an excavator cannot be held liable for damages resulting from contact with the operator's facilities, unless the damages result from gross negligence or willful and wanton conduct, when the operator has failed to mark or has improperly marked the tolerance zone for the facilities in the area of the planned excavation.

K.S.A. 66-1811(b) further makes clear that an excavator is not liable for damages caused by the operator's failure to properly mark the location of the tolerance zone of the damaged facility. Specifically, K.S.A. 66-1811(b) states: "In no event shall the excavator be responsible for any damage to underground facilities if such damage was caused by the failure of the operator to correctly and properly mark the location of the tolerance zone of the damaged facility."

Here, the trial court never clearly found whether the location of the tolerance zone of the 1,800 pair telephone cable in Count III was properly marked. Instead, the trial court relied on the fact that the damaged telephone line fell within the tolerance zone of another marking in that area. The trial judge found as follows:

"The first question of issue of fact was whether [SBT] properly marked the location of its 1800 pair cable that is the subject of count 3 of [SBT's] petition, and count 3 of [APAC's] counter petition and the answer . . . to that question the Court finds is yes it was properly marked. There is a contention . . . that there w[ere] two lines at that location, the larger service line and then the smaller one individual line and . . . that [APAC] contended that you could not see the marks for the one line that was actually damaged. Quite frankly, I looked at the pictures and although I heard the SBC employees testify that they could see those marks I couldn't see them on the pictures. However, . . . the line . . . the other facility that was there clearly showed on the sidewalk the facility did exist at that location and the testimony that I heard from the witness stand was that even if . . . you disregarded that single line marking that I couldn't see and . . . [APAC] claimed they couldn't see but if you took the tolerance zone from the other marking that damage occurred within the tolerance zone. So yes, the tolerance zone was properly marked. I would also note that the testimony . . . indicated to me because we were using a bobcat as opposed to a backhoe to move concrete they were preparing the location for, I guess, setting up forms to pour driveways and such. The concrete had already been removed in that location so, I suspect, that some of the marking had already been removed, the exact location where they cut a curb simply because there had already been

work done at that location. In any event, I find that that location was properly marked."

APAC contends that the trial court erred when it found that the damage caused to the cable in Count III of SBT's petition constituted a violation of the Act because the cable was within the tolerance zone of another locating mark for an SBT service line that was not damaged during the excavation. APAC maintains that the Act only allows SBT to recover damages against APAC if SBT establishes that it correctly and properly marked *the location of the tolerance zone of the damaged facility*. On the other hand, SBT argues that the trial court "clearly and unambiguously found that the tolerance zone for SBT's 1,800 pair cable was properly marked, after considering and rejecting [APAC's] argument that the markings for the 1,800 pair cable were not visible in the photographs."

Although the trial court clearly stated that "the tolerance zone was properly marked," it apparently relied on the fact that the damage to the cable had occurred within the tolerance zone of another marking. The trial court never clearly found that the location of the tolerance zone for the 1,800 pair telephone cable involved in Count III had been properly marked.

The question becomes whether APAC can be held liable under the Act because the damage to the telephone cable occurred within the tolerance zone of another marking. This question requires this court to construe together various provisions under the Act. " 'In construing statutes and determining legislative intent, several provisions of an act in pari materia must be construed together with a view of reconciling and bringing them into workable harmony if possible.' [Citation omitted.]" *State v. Huff*, 277 Kan. 195, 203, 83 P.3d 206 (2004).

The Act places a duty upon the operator, once it has been informed of a planned excavation, to mark the locations of the tolerance zone of each and every underground facility. As set forth above, once an operator has been notified of a planned excavation, K.S.A. 66-1806(a) requires the operator to "inform the excavator of the tolerance zone of the underground facilities of the operator in the area of the planned excavation by marking, flagging or other

acceptable method." K.S.A. 66-1802(p) states: " 'Tolerance zone' means the area within 24 inches of the outside dimensions in all horizontal directions of *an underground facility.*" (Emphasis added.) By including the term "means," the legislature has restricted the definition of "tolerance zone" to that which is found within K.S.A. 66-1802(p). The term "means" is used to stipulate the complete and exclusive meaning of "tolerance zone." See Child, Drafting Legal Documents: Materials and Problems, Stipulative Definitions, p. 237 (1988). By restricting the "tolerance zone" to a 24-inch area "in all horizontal directions of an underground facility," the legislature apparently intended the operator to mark the tolerance zone of each underground facility that is located within the planned excavation site. K.S.A. 66-1802(p).

The legislature's intent that the location of the tolerance zone of each and every facility must be marked is evidenced in other provisions of the Act. Under K.S.A. 66-1803, "[a]n excavator shall not engage in excavation near the location of any underground facility without first having ascertained, in the manner prescribed in the act, *a location of all underground facilities* in the proposed area of the excavation." (Emphasis added.) Finally, K.S.A. 66-1811(b) relieves an excavator from liability for damage to underground facilities "if such damage was caused by the failure of the operator to correctly and properly mark *the location of the tolerance zone of the damaged facility.*" (Emphasis added.) K.S.A. 66-1811(b) fails to indicate that the excavator retains liability if the operator made other markings in the area and the damaged cable falls within the tolerance zone of those other markings. Instead, K.S.A. 66-1811(b) indicates that the location of the tolerance zone of the particular facility that was damaged must be marked.

Interestingly, SBT presented testimony at trial that the damaged cable involved in Count III fell within 24 inches of a multifacility marking. Nevertheless, there was never any testimony that this multifacility marking was the specific marking for the tolerance zone of the 1,800 pair telephone cable. Moreover, SBT never presented any evidence that a multifacility marking was an acceptable method of marking the location of a tolerance zone under the Act. K.S.A. 66-1802(g) defines "marking" as "the use of stakes, paint,

flags or other clearly identifiable materials to show the field location of underground facilities, in accordance with the rules and regulations promulgated by the state corporation commission in the administration and enforcement of this act." At trial, no evidence was presented that the Kansas Corporation Commission had approved a "multi-facility" marking as an acceptable method of marking the tolerance zone of an underground facility. Further, based on our analysis above, we conclude that the legislature intended an operator to mark the tolerance zone location of each and every underground facility.

When construing the various statutes under the Act together, we ascertain the intent of the legislature to be that the tolerance zone of each and every underground facility within the planned excavation site must be marked by the operator. When the operator fails to mark the tolerance zone of an underground facility that is later damaged by an excavator, the excavator is not liable for damages under the Act unless those damages result from gross negligence or willful and wanton conduct.

In this case, the trial court never made a specific finding that SBT had properly marked the location of the tolerance zone of the 1,800 pair telephone cable that was damaged. As discussed above, this finding was necessary to establish APAC's liability under the Act. The trial transcript contains testimony presented by SBT that the location of the tolerance zone of the 1,800 pair cable was properly marked. On the other hand, there is also evidence presented by APAC that the location of the tolerance zone of the 1,800 pair cable had not been marked. We cannot resolve this issue of fact. "The determination of the weight and credence of oral evidence is exclusively a function of the trier of facts. [Citation omitted.]" *Griffin v. Price*, 199 Kan. 649, 651, 433 P.2d 464 (1967). As an appellate court, we do not " 'weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact.' [Citation omitted.]" *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 775, 69 P.3d 1087 (2003). Therefore, we determine that this case should be remanded to the trial court to determine whether the location of the tolerance zone of the 1,800 pair telephone cable was properly marked.

## II. Was SBT entitled to a rebuttable presumption of negligence against APAC?

Finally, APAC argues that the trial court erred in finding that there was a rebuttable presumption of negligence against APAC concerning the damages to SBT's two telephone cables that were the subjects of Counts II and III of SBT's petition and APAC's counterclaim. As in the previous issue, APAC's argument involves the interpretation of statutes in the Act. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. An appellate court is not bound by the trial court's interpretation of a statute. *Cooper*, 277 Kan. at 250.

K.S.A. 66-1811(a) is the provision of the Act which creates a rebuttable presumption of negligence. K.S.A. 66-1811(a) states:

"In a civil action in a court of this state when it is shown by competent evidence that personal injury, death or other damages, including damage to any underground facilities, *occurred as a result of a violation of this act*, there shall be a rebuttable presumption of negligence on the part of the violator." (Emphasis added.)

Under K.S.A. 66-1803, "[a]n excavator shall not engage in excavation near the location of any underground facility without first having ascertained, in the manner prescribed in this act, a location of all underground facilities in the proposed area of the excavation." In the pretrial order filed in this case, SBT and APAC stipulated that under K.S.A. 66-1804, APAC "served a notice of intent of excavation to [SBT] via Kansas One Call with regard to requesting that [SBT] mark the locations of the telephone cables at issue prior to the commencement of [APAC's] excavation in the area of each of the telephone cables."

The excavator's duty to use reasonable care is outlined in K.S.A. 66-1809(a), which states: "Upon receiving information as provided in K.S.A. 66-1806, and amendments thereto, an excavator shall exercise such reasonable care as may be necessary for the protection of any underground facility in and near the construction area when working in close proximity to any such underground facility." K.S.A. 66-1806 is the statute dealing with the operator's duties to properly identify the tolerance zone of underground facilities and

the excavator's liability when the operator fails to properly mark the tolerance zone.

## A. Telephone Cable Involved in Count II

APAC argues that the trial court based the presumption of negligence regarding the telephone cable involved in Count II simply because APAC damaged the telephone cable in a properly marked tolerance zone. APAC argues that the trial court did not find that APAC failed to exercise reasonable care in violation of K.S.A. 66-1809(a).

In arguing that the trial court erred when it found that APAC's damage to the telephone cables, in and of itself, supported a presumption of negligence, APAC points to the following statements made by the trial judge:

"[SBT] had contended that [APAC's] use of mechanized equipment within the 24 [-inch] tolerance zone creates a presumption of negligence under the statute 66-1811. Actually I've reviewed the statute and I don't know if that creates a presumption, it's actually the damage that creates a presumption or rebuttable presumption of negligence on the part of the violator of that act, if that act was violated."

Nevertheless, the trial court's statements actually go against APAC's argument. Although the trial court's statements from the bench are not as artfully worded as K.S.A. 66-1811(a), these statements clearly show the trial court's recognition that there must be a violation of the Act for a rebuttable presumption of negligence to attach.

Concerning the telephone cable involved in Count II, the trial court clearly based the presumption of negligence on its finding that APAC failed to use reasonable care. In rendering its decision from the bench, the trial court stated: "The next question is whether [APAC's] excavation was exercised with reasonable care as necessary for the protection of telephone cables and, of course, the answer is no and there is a rebuttable presumption of negligence." As SBT points out in its brief, this finding was apparently in response to the issue identified in the pretrial order as "[w]hether [APAC's] excavation was exercised with reasonable care

as was necessary for the protection of the telephone cables at issue in Counts I and II of [SBT's] Petition."

Later, in detailing its reasons for assessing negligence damages against APAC for Count II of SBT's petition, the trial judge stated:

"Count 2, the facts are very similar as to the location of the line. It was immediately under the concrete, in fact, there was some testimony that it was actually in the concrete but I'm, for the purpose of this . . . I can safely make the assumption or make the finding that it was, in fact, immediately under the concrete, again the same procedure was being done. This case is different though because the failure of the [SBT] to disclose the depth is not relevant because by this time [APAC] knew what the depth of the cable was . . . they'd already cut the cable immediately across the street and they knew that it was very shallow. So there's still liability . . . negligence that can be assessed to [SBT] for . . . trying to bury a line or just laying it on top of the roadway and the roadway being poured and so there's no . . . there's no buffer between the concrete that's being removed . . . and the line."

Essentially, the trial court found that because APAC had already damaged the same telephone cable in a previous incident, APAC knew the shallow depth of the telephone cable. Nevertheless, APAC chose to use the same procedure that was used in the earlier incident. The trial court's findings are supported by the record. When APAC damaged the 900 pair telephone cable in the August 2003 incident, they were put on notice as to the close proximity of the cable to the concrete. Moreover, after this first incident, McLaren warned an APAC employee that some of the cables were located at a shallow depth and to exercise caution. Nevertheless, APAC chose to use the same procedure of removing the concrete with a backhoe. Although Beemer testified that he could not "hand expose" the underground cable because concrete was on both sides of the area, Brown testified about a procedure where the concrete could be broken up by a jackhammer and then hand shoveled out of the area.

After reviewing the trial transcript, we find substantial competent evidence to support the trial court's finding that APAC failed to use reasonable care in its excavation work. By failing to use reasonable care, APAC violated K.S.A. 66-1809(a). This violation of the Act was sufficient to establish a rebuttable presumption of

negligence under K.S.A. 66-1811(a). Therefore, APAC's argument fails.

### B. Telephone Cable Involved in Count III

APAC further contends that the trial court failed to make the necessary finding when ruling on Count III of SBT's petition that APAC failed to use reasonable care during its excavation.

SBT concedes that it is not clear whether the trial court made a specific finding that APAC failed to exercise reasonable care. In finding APAC 100% liable for the damages to the telephone cable involved in Count III of SBT's petition, the trial judge stated:

"In count 3 . . . we still have the presumption of negligence, I've already indicated that I've found that . . . the damage occurred within the properly marked tolerance zone. And this case is different because in count 3 [APAC's] only claim of negligence is a failure to mark. Since I have found it was marked properly, it's still shallow but the concrete had already been removed the first time when they were providing grading and that sort of thing when this cable was cut, and the only allegation of negligence by [APAC] is failure to mark and a presumption of negligence is against [APAC] the Court will assess 100% of the negligence or damage to [APAC] in this case."

Although the trial court found that there was a presumption of negligence, it is unclear on which violation of the Act the trial court based this presumption.

Nevertheless, as discussed above, this case is remanded to the trial court because it never made a finding about whether SBT properly marked the location of the tolerance zone of the damaged facility involved in Count III. If the trial court determines that the location of the tolerance zone of the damaged facilities was never properly marked, then APAC is liable to SBT only for the damages that resulted from gross negligence or willful and wanton conduct. On the other hand, if the trial court finds that SBT properly marked the location of the tolerance zone of the damaged facility, then the trial court should make further findings about whether APAC is liable. Such findings would necessarily include whether a presumption of negligence attaches to APAC under K.S.A. 66-1811(a). In order to find a presumption of negligence under K.S.A. 66-

1811(a), the trial court must necessarily find that the damage to the facility resulted from a particular violation of the Act.

One further argument by SBT should be briefly addressed. SBT suggests that the Act creates a presumption of negligence based upon an excavator's action of excavating within the tolerance zone. Nevertheless, K.S.A. 66-1811(a) makes clear that a rebuttable presumption of negligence attaches "when it is shown by competent evidence that personal injury, death or other damages, including damage to any underground facilities, *occurred as a result of a violation of this act*." Thus, in order to create a rebuttable presumption of negligence, there must be evidence that the Act was violated. There is no provision of the Act that prohibits excavation in a tolerance zone. Rather, K.S.A. 66-1809(a) requires the excavator to use "reasonable care as may be necessary for the protection of any underground facility in and near the construction area when working in close proximity to any such underground facility." Thus, failure to use reasonable care under K.S.A. 66-1809(a) would support a rebuttable presumption of negligence under K.S.A. 66-1811(a). Nevertheless, a finding that an excavation was performed within the tolerance zone does not alone support a rebuttable presumption of negligence under K.S.A. 66-1811(a).

Affirmed in part, reversed in part, and remanded with directions.