190 P.3d 973 (2008)
RURAL WATER DISTRICT NO. 3 OF MIAMI COUNTY, Kansas, Appellee,
v.
MILLER PAVING & CONSTRUCTION, L.L.C., Appellant.
No. 98,890.
Court of Appeals of Kansas.
August 22, 2008.
*975 Cline I. Boone, of Shawnee, for appellant.
Daniel D. Covington, of Anderson & Byrd, L.L.P., of Ottawa, for appellee.
Before HILL, C.J., PIERRON and GREEN, JJ.
GREEN, J.
Miller Paving and Construction, L.L.C. (Miller) appeals from the trial court's judgment in favor of Rural Water District No. 3 of Miami County, Kansas (Water District) on the Water District's claim of negligence in the amount of $6,116.33. On appeal, Miller contends that the trial court erred in determining that Miller was negligent. In addition, Miller asserts that the trial court erred in determining that the Water District met its duty of care on all but two occasions. We disagree. Accordingly, we affirm.
Miller was the general contractor on a 14-mile gas line installation project for the City of La Cygne. The project lasted from approximately June 2004 to September 2004. During this time, the Water District received tickets from Kansas One-Call, notifying it that Miller would be doing work in an area where the Water District had water lines. The Water District was a member of and had a contractual agreement with Kansas One-Call. Under its contract with Kansas One-Call, the Water District had agreed that once it was notified of a contractor's work in a particular area, it would locate, mark, or otherwise provide the approximate location of the underground facilities in a manner as to allow the use of hand-dug test holes to determine the precise location of the underground facility.
Rick Courtney, who owned Courtney Construction, was the water line locator for the Water District. Courtney picked up the Kansas One-Call tickets and proceeded to locate the water lines in the areas where work was being done by Miller. Doug Simms, Miller's foreman on the gas line installation *976 project, met with Courtney and showed him a map of the area where Miller would be installing gas lines. Courtney then showed Simms the general location of the Water District's water lines on the map. Courtney also physically marked the approximate location of the water lines with flags.
The water lines located in the area of the gas line installation project had been in place since the late 1960's, were made of PVC plastic, and did not have tracer wire. In locating these water lines, Courtney referred to the Water District's maps and diagrams. According to Courtney, however, the Water District's maps and diagrams were vague and basically told him on which side of a road a water line was located. As a result, Courtney had to rely on his knowledge about the location of several of the water lines during previous repairs. Moreover, Courtney looked for ditch lines and differentials in soil conditions that would indicate where the water lines had been placed.
Kevin James, the managing member of Miller, acknowledged that Courtney had told him that the water lines could not be located with any accuracy.
Apparently, during his contact with Miller, Courtney had stated on numerous occasions that the plastic lines could not be accurately located due to the absence of tracer wire in the pipes. James testified about his experience in using two particular pieces of equipment to ascertain the location of underground utility lines. According to James, when PVC pipes do not have tracing wires, the equipment can be used to attempt to induce a signal in the pipes and then to detect the location of the signal within the pipe. Nevertheless, James did not use this equipment to detect the location of the water lines during the gas installation project. Moreover, although Courtney had heard of the concept of using sonar technology to detect the location of underground utility pipes that did not have tracer wire, he had never been trained on such equipment.
During the course of the gas line installation project, Miller struck and damaged the Water District's water lines approximately 14 times. Two of the water lines that Miller struck had never been marked by Courtney. James acknowledged that on two or three of the strikes, Miller had hand exposed the water line before striking it. Courtney testified that several of his markings were very close to the location of the water lines (6 inches to 3 feet) and that none of his markings were farther than 5 to 7 feet from the water lines. Simms testified about each line strike and indicated that, aside from the water pipes that Courtney had neglected to mark and the pipes that Miller had hand exposed before striking them, Courtney's markings were 1 to 5 feet from where the strikes had occurred.
When Miller would strike a water line, Simms would call Courtney who would go to the site for repairs. James testified that on all but one occasion, Miller dug out the water line for Courtney to make repairs. On the other hand, Courtney testified that in approximately 50 percent of the strikes, Miller would assist in exposing the water line so that repairs could be made. Courtney testified about the repairs he made after each water line strike and indicated that Miller helped him with the actual repairs on several of the water line strikes. Based on Courtney's testimony, when Miller struck the water lines, the Water District sustained damages in the form of lost water from the strike, parts used to repair the water lines, additional water used to flush out the water lines, and the amount charged by Courtney for the service call.
In September and October 2004, the Water District sent out invoices to Miller for the damages that it claimed resulted from Miller's strikes to the water lines. In March 2005, the Water District sued Miller for negligence. Based on the pretrial order in this case, the Water District proceeded to a bench trial under three theories: (1) negligence; (2) strict liability for trespassing; and (3) liability for intentional trespassing for the damages that occurred after Miller became aware of the location of the water lines. Miller raised the defenses of comparative fault, failure to mitigate damages, and consent to enter. In addition, Miller counterclaimed that the Water District was negligent in failing to locate or in failing to properly mark its water lines and claimed *977 damages for its costs for downtime and for repairing the water lines. The Water District alleged the defense of comparative fault.
At the conclusion of the bench trial, the trial court found that Miller owed a duty to exercise reasonable care in its excavation to avoid causing injury to others or to the property of others. The trial court determined that an excavator's standard of care is to exercise ordinary care to locate the lines to avoid injury to the property of others when underground lines fall outside the scope of the Kansas Underground Utility Damage Prevention Act (KUUDPA) and when the lines are difficult to locate. Conversely, the trial court determined that the owner or operator of such underground lines does not owe to the excavator a per se duty to specifically locate and mark the lines. The trial court determined that the Water District had fulfilled its duty when it took reasonable steps to put Miller on notice that its water lines were located in the path of the intended areas of excavation and gave Miller its best information about the location of the water lines. The trial court held that in the instances where Miller was notified by the Water District of the presence of a water line at a given site, but Miller failed to dig test holes to determine the precise location of the water line, Miller failed to exercise reasonable care. The trial court noted that in the two instances where the Water District had failed to provide Miller its best information of the location of its water lines, Miller was not liable for the damages invoiced for those dates.
Aside from the two line strikes where the Water District had neglected to mark the approximate location of its water lines, the trial court granted damages to the Water District resulting from Miller's line strikes. In awarding damages, the trial court reduced the damages claimed by the Water District by not allowing damages for items invoiced as "mobilization," by reducing the items invoiced as "labor" by 50 percent to avoid double recovery, and by correcting the amount billed for parts used in repairing a particular line strike. Accordingly, the trial court entered judgment in favor of the Water District on its negligence claim for $6,116.33 plus costs and postjudgment interest.

Did the Trial Court Err in Determining That Miller Was Negligent?
First, Miller argues that the trial court erred in finding that it breached its duty to exercise reasonable care and in finding that it had a duty to visually expose the Water District's water lines before excavating. On the other hand, the Water District argues that the trial court properly determined that when underground lines fall outside the scope of the KUUDPA and when the lines are difficult to locate, an excavator is bound to exercise ordinary care to locate such lines so as to avoid injury to the property of others. The Water District further argues that the trial court was correct in finding that Miller had breached this duty of care on all but two occasions.
Miller's argument requires this court to review the trial court's findings of fact and conclusions of law. An appellate court reviews the trial court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. An appellate court has unlimited review of conclusions of law. LSF Franchise REO I v. Emporia Restaurants, Inc., 283 Kan. 13, 19, 152 P.3d 34 (2007). An appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. LSF, 283 Kan. at 19, 152 P.3d 34.
To recover for negligence, a plaintiff must prove the existence of a duty, breach of the duty, injury, and a causal connection between the duty breached and the injury suffered. Whether a duty exists presents a question of law. Whether a duty has been breached presents a question of fact. Sall v. T's, Inc., 281 Kan. 1355, 1360, 136 P.3d 471 (2006).

*978 Duty of Care

The first question to be determined in this case is whether Miller had a duty of care to the Water District. If so, what was the scope of that duty? Both parties agree with the trial court's determination that the KUUDPA does not apply in this case. The KUUDPA defines the duty of care that applies to operators of certain underground facilities. See Southwestern Bell Telephone v. APAC-Kansas, Inc., 36 Kan.App.2d 299, 309-10, 138 P.3d 1238 (2006). Nevertheless, the underground facilities to which the KUUDPA applies is limited by K.S.A. 66-1802(e), which states:
"`Facility' means any underground line, system or structure used for gathering, storing, conveying, transmitting or distributing gas, electricity, communication, crude oil, refined or processed petroleum, petroleum products or hazardous liquids; facility shall not include, any production petroleum lead lines, salt water disposal lines or injection lines, which are not located on platted land or inside the corporate limits of any city."
The legislature's intent, as expressed through the plain language of K.S.A. 66-1802(e), was not to include water lines when referring to the underground facilities that are covered by the KUUDPA. As a result, the trial court properly determined that the KUUDPA does not apply in this case.
For informational purposes only, we note that our legislature has amended K.S.A. 66-1802(e) to include water lines when referring to the underground facilities that are covered by the KUUDPA. This legislation will go into effect on July 1, 2009. The new legislation establishes a tolerance zone for water lines of "not less than 60 inches of the outside dimensions in all horizontal directions of an underground water . . . facility." House Bill No. 2637.
Throughout its appellate brief, Miller argues that the trial court, after determining that the KUUDPA did not apply in this case, still used the duty of care under the KUUDPA against it. Miller contends that this was contrary to the common law, which the trial court was required to apply under K.S.A. 77-109. Under K.S.A. 77-109, the common law remains in force in this state where the constitution is silent or the legislature has failed to act. Ling v. Jan's Liquors, 237 Kan. 629, 640, 703 P.2d 731 (1985). Miller further argues that because the legislature excluded water lines from the KUUDPA, the duty of care under a common-law negligence theory must be less stringent than the KUUDPA.
Miller provides no authority for its argument that the duty of care under a common-law negligence theory must be less stringent than the duty of care under the KUUDPA. A party who fails to press a point by supporting it with pertinent authority or by showing why it is sound despite contrary authority or a lack of supporting authority forfeits the point. McCain Foods USA, Inc. v. Central Processors, Inc., 275 Kan. 1, 15, 61 P.3d 68 (2002). Moreover, Miller's argument that the trial court applied the KUUDPA in determining the duty of care is simply unsupported by the record in this case.
What is evident from the record is that the trial court applied common-law concepts to this unique case in order to determine each party's duty of care. Neither party was able to provide the trial court with a case that defined the duty of care in a situation such as the present one. Miller admits that although it reviewed numerous cases, it was unable to find a case similar to the facts here. As a result, the trial court was faced with the difficult task of applying common-law negligence concepts that had been used in actions involving underground utilities.
As the Water District points out, the trial court, after flatly rejecting the application of the KUUDPA to the present case, looked to common law as reported in two A.L.R. annotations and to public policy when expressing the rule upon which its primary holding was based. See Annot., Liability of One Excavating on Private Property for Injury to Public Utility Cables, Conduits, or the Like, 28 A.L.R.5th 603; Annot., Liability of One Excavating in Highway for Injury to Public Utility Cables, Conduits, or the Like, 73 A.L.R.3d 987. The trial court noted that although the cases cited in the two A.L.R. *979 annotations were not factually similar to the present case, many jurisdictions had originally looked at these types of cases under a strict liability theory. Specifically, the courts had held that an excavator with notice of the existence of a utility proceeded at its own peril. Other jurisdictions had looked at the cases under a trespass or a constructive notice theory. The trial court noted, however, that the general rule involved an idea of reasonable care.
Pointing out that the common law recognized that the utility already in place had a property interest right, the trial court stated:
"[M]uch of the old case law in the common law theory relies on this general concept  and, that is that the utility that's in place has a property interest right. First in time, first in right. They're already there. They don't get any benefit from the secondary utility coming through."
The trial court noted that the utility already in place should not be responsible for the cost of identifying water lines that are difficult to locate, particularly when an excavator can incorporate those costs into its bid on a project:
"It makes very little sense, from a public policy perspective, to pass the cost of the disclosure of that line onto them, when they receive no benefit.
"What makes much more sense, from a public policy perspective, is that as applied to the facts in this case, that the contractor is responsible for that cost. Because, then, if the contractor who does the appropriate investigation of the facts before entering their bids, finds out that there's a Rural Water District with lines that are going to be impossible, if not at least very, very difficult, to locate with any degree of precision, that that cost can be built into that bid.
"Which, is passed onto, in this case, the City; who should be ultimately responsible for the cost of trying to avoid damage to that preexisting utility.
. . . .
"From a legal perspective, I think you come back to the concept that that utility's already there, presumably on a lawful easement. And, they don't get any benefit from this. And, they're just sitting there. . . and they really don't have a vested stake in this, except to protect themselves."
The trial court found that in this case, the parties were dealing with 1960's vintage PVC line that had no good discernable way of being detected, without some relatively new and sophisticated technology. The trial judge determined that under the particular facts of this case, Miller had the duty to exercise reasonable care to avoid injury to the Water District's water lines:
"Now, I believe that the rule that I'm about to pronounce for this case, applies only to, at best, non-inherently dangerous utilities outside the KUUDPA, where lines don't have simple technology for precise location; like, the finding wire.
"In those instances when a contractor, or subsequent party, is on notice of the existence of that utility, they have to exercise reasonable care to avoid injury to the existing utility."
The trial court's decision appears to be in line with the common law. A common theme arising from cases involving underground utilities is that an excavator can be held liable on a theory of negligence where the excavator knew of the existence of an underground facility or should have known that buried utilities would be found in or near the excavation sites and failed to exercise ordinary care. See 28 A.L.R.5th at 618. See also 73 A.L.R.3d at 990 (recovery permitted under theory of negligence where contractor failed to exercise reasonable care under circumstances). Willmar Gas Co. Inc. v. Duininck, 236 Minn. 499, 53 N.W.2d 225 (1952) (contractor performing work for municipality in streets has duty of reasonable care toward owner of gas mains in public streets and is liable for negligence in performance of its work).
In Annot., Damage to Underground Utility, 28 A.L.R.5th, § 16, p. 641, numerous cases are cited where courts have concluded that contractors negligently damaged underground utility conduits during excavation on private property or have held that a cause of action for negligence existed where there *980 was evidence to establish that the contractors had knowledge of the existence of the utilities, or had notice or reason to know of their existence and failed to take reasonable precautions to avoid the damage. See, e.g., R.B. Tyler Co. v. Southern Bell Tel. & Tel. Co., 347 S.W.2d 669 (Ky.1961) (defendant that knew of presence of underground cable was under duty to exercise at least ordinary care not to damage it).
In this case, where Miller knew that underground water lines were present in its path of excavation, the trial court did not err in determining that Miller had a duty to exercise reasonable care to avoid injury to the Water District's water lines.

Breach of Duty of Care
The next question for this court's consideration is whether Miller, during its excavation, breached its duty of reasonable care to the Water District. In determining that Miller had breached its duty of care, the trial court noted that Miller had admitted that it had been told by Courtney that the Water District's water lines could not be located with any degree of precision. Further discussing the notice that Miller had received concerning the imprecise location of the water lines, the trial court stated:
"[Miller] knew what they were dealing with, going into this whole thing. They were on absolute notice those lines were there. Then, they were on specific notice, because of the conversation that occurred between Mr. Courtney and Mr. Simms. Where, Mr. Courtney, to the best of his ability, let them know the general location. And, those were drawn on those drawings."
The trial judge then went on to discuss what it felt that Miller should have been doing in exercising its duty of reasonable care:
"In my opinion, any time Miller wasn't digging some kind of test hole to see exactly where this line was, they were failing in their duty, miserably. They knew these things weren't going to be accurate. And, it really doesn't appear, not only from the photographs, but from the testimony, that despite the knowledge of the fact that these markings did not have any particular degree of accuracy, we just kind of took a certain distance away from the flags as best as we can, and ducked fences and trees and just went right on down the line. And, that was not exercising reasonable care in my opinion."
Miller maintains that the trial court's ruling requiring it to visually expose the water lines was an erroneous application of K.A.R. 82-14-1(k), which applies to the KUUDPA. K.A.R. 82-14-1(k) states:
"`Reasonable care' means the precautions taken by an excavator to conduct an excavation in a careful and prudent manner. Reasonable care shall include the following:
(1) Providing for proper support and backfill around all existing underground facilities;
(2) using nonintrusive means, as necessary, to expose the existing facility in order to visually determine that there will be no conflict between the facility and the proposed excavation path when the path is within the tolerance zone of the existing facility;
(3) exposing the existing facility at intervals as often as necessary to avoid damage when the proposed excavation path is parallel to and within the tolerance zone of an existing facility; and
(4) maintaining the visibility of the markings that indicate the location of underground utilities throughout the excavation period."
K.A.R. 82-14-1(k) merely sets forth some of the precautions that excavators can take to exercise reasonable care to underground facilities. Because this regulation relates to the KUUDPA, the trial court did not apply it to the instant case. Nevertheless, precautions similar to those listed under K.A.R. 82-14-1(k) would be pertinent in a case involving an excavation project in the vicinity of existing underground utilities but not covered by the KUUDPA. For example, it might be necessary for an excavator owing a duty of reasonable care to existing underground utilities to maintain the markings identifying the location of the utilities throughout the excavation period and to expose the existing facility *981 in order to avoid damage. As a result, K.A.R. 82-14-1(k) incorporates the common-law principle that an excavator has the duty to exercise reasonable care to avoid injury to existing underground utilities.
Here, in order to exercise reasonable care to avoid causing injury to the Water District's water lines, Miller needed to identify the specific location of the water lines before performing its excavation work or to ascertain that the water lines were not in the path of its excavation work. Miller had been notified that the Water District had estimated the location of the water lines but had been unable to ascertain their precise location. Based on what Miller knew about the location of the water lines, it could have exercised its duty of reasonable care by visually exposing the water lines in order to avoid hitting them. Instead, Miller chose to proceed with its excavation efforts, often with heavy equipment, without determining the precise location of the water lines, even though it knew that water lines were located in the vicinity of where it was laying gas lines. Under the facts of this case, Miller's actions were inconsistent with its duty of reasonable care to avoid causing damage to the Water District's water lines. As a result, the trial court properly determined that Miller breached its duty of reasonable care.

Did the Trial Court Err in Determining That the Water District Met its Duty of Care on All but Two Occasions?
Finally, Miller argues that the trial court erred in finding that the Water District's duty of care was to locate its water lines without any specificity or precision other than a flag in the ground and in finding that the Water District had not breached its duty of care. On the other hand, the Water District argues that the trial court was correct in identifying the Water District's only duty as to notify Miller of the presence of water lines where Miller intended to excavate and in finding that the Water District met this duty of care on all but two occasions.
As stated previously, our standard of review is to determine if the trial court's findings are supported by substantial competent evidence and are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. An appellate court has unlimited review of conclusions of law. LSF Franchise, 283 Kan. at 19, 152 P.3d 34. An appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. LSF, 283 Kan. at 19, 152 P.3d 34.

Duty of Care
The trial court determined that the Water District, once it had been told about Miller's gas line project, had a duty to put Miller on notice of the location of its water lines. Nevertheless, determining that the Water District did not have a duty to precisely identify the location of its water lines, the trial judge stated:
"I am unwilling to impose the duty on a Rural Water District in this district, to have to go out and purchase the most sophisticated equipment possible. And, do these sounding sonar things, just so a contractor can know where that water line is.
"Again, I think that's passing the burden of expense on, and that's just not equitable and fair. And, I don't think that should be the policy."
In arguing that the trial court applied an erroneous duty of care, Miller cites Wahwasuck v. Kansas Power & Light Co., 250 Kan. 606, 828 P.2d 923 (1992), for the proposition that the failure of a utility owner to properly mark and locate its underground facility makes it liable on a negligence claim. Nevertheless, Wahwasuck does not include such a broad holding. Wahwasuck dealt with a completely different issuethe foreseeability of personal injury from an underground power linethan the case at hand. Moreover, Wahwasuck dealt with a dangerous underground power line, a hazard which brings with it a whole body of common law that is not readily applicable to other less dangerous underground utility lines. Wahwasuck does not stand for the broad rule of law that Miller proposes.
In its appellate brief, Miller argues that the duty of care applied by the trial court *982 was erroneous but fails to come forward with any pertinent authority that defines the Water District's duty of care under the facts of this case. In fact, Miller concedes that there is no Kansas case that directly relates to the facts at issue in this case. Without attempting to specifically define the duty owed to it by the Water District, Miller simply argues that the duty owed to it by the Water District "must be more than simply putting flags in the ground."
Miller encourages this court to set tolerance zones for water line operators and invites this court to look at the website for Water District No. 1 of Johnson County, Kansas, for information on how another water district has set forth its own tolerance limits. Nevertheless, as the Water District points out, Water District No. 1 of Johnson County, Kansas, was never a party to these proceedings, and the proffered guidelines were never put before the trial court in any document, testimony, or oral argument. Because this information was never presented to the trial court and was never made a part of the appellate record in this case, it will not be considered. See Miller v. Bartle, 283 Kan. 108, 119, 150 P.3d 1282 (2007) (Issues not raised before the trial court cannot be raised on appeal.); State v. Bloom, 273 Kan. 291, 307, 44 P.3d 305 (2002) (Assertions made in an appellate brief are not sufficient to satisfy inadequacies in the record on appeal.).
The trial court's decision in this case appears to be consistent with the common-law principles discussed in the previous issue. Moreover, there appears to be no case that imposes a common-law duty upon a water district to precisely locate its existing water lines that are not readily ascertainable. As found by the trial court, this case involved the location of 1960's PVC water pipes that contained no tracer wire. Due to the absence of tracer wire, these pipes could not be precisely located with the methods used to locate newer pipes. There was some evidence in the record that attempts to locate the pipes could be made through sonar technology. Although the Water District's locator had heard of this type of technology, he did not have the equipment with this technology and he had not been trained to use such equipment. The Water District's locator could estimate the location of the water lines based on the Water District's maps, the prior locates, and his observations of the land but could not precisely identify the water lines.
Miller, as the contractor on the major gas line project, would be placing underground gas lines in areas where the Water District's water lines were already located. Miller had the opportunity to include the cost of locating the water lines in his bid on the project. As the trial court stated, it would not be fair to put the burden of precisely locating the water lines on the Water District when Miller got the bid on the project.
Under the unique facts of this case, the trial court's determination that the Water District owed a duty of care to Miller to reasonably mark the location of its water lines was proper.

Breach of Duty
Determining that the Water District did not breach its duty of reasonable care except in the two instances where it failed to mark its water lines, the trial court found that the Water District took every reasonable action to try to notify Miller of the water lines. Specifically, the trial court stated that the Water District "went out and did the best they could to mark these locations under the circumstances, and what was available, and what could be reasonably accepted."
The trial court's finding is supported by substantial evidence in the record. Once the Water District was notified of the area in which Miller would be excavating, it made reasonable efforts to estimate the location of the water lines for Miller. The Water District's locator specifically informed Miller that the markings were only estimates and that they were not precise. Under the facts of this case, the trial court properly determined that the Water District did not breach its duty of care to Miller, except in the two instances where the Water District completely failed to mark the water lines.
Affirmed.